# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CHRISTOPHER CONYERS,** | ) |
| Petitioner, | ) ) |
| v. | ) NO. 3:16-cv-00837 |
| | ) CHIEF JUDGE CRENSHAW |
| **UNITED STATES OF AMERICA,** | ) |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Before the Court is Petitioner's Superseding Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 24); the Government's response (Doc. No. 32); Conyers' reply (Doc. No. 38); Conyers' supplemental brief (Doc. No. 45); the Government's supplemental brief (Doc. No. 48); and Conyers' supplemental response brief (Doc. No. 50). As explained below, the Court will deny the motion.

I.  Background

In criminal case number 3:09-cr-00240-1,[1] Conyers was charged with conspiracy to aid and assist escape and attempted escape from federal custody; aiding and abetting an attempt to escape from federal custody; conspiracy to commit Hobbs Act robbery and extortion; possession of a firearm in furtherance of a crime of violence; being a convicted felon in possession of a firearm; and being a convicted felon in possession of ammunition. (Case No. 3:09-cr-00240-1, Doc. No. 295.) On July 25, 2011, Conyers entered into a Plea Agreement with the Government

---

[1] The documents and transcripts cited herein from Conyers' criminal case are docketed under seal. However, the parties have referred to them and quoted from them in their briefs. The Court's discussion herein does not breach any confidences or involve any issues not discussed by the parties.

pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(B) and governed in part by Federal Rule of Criminal Procedure 11(c)(1)(C). (Case No. 3:09-cr-00240-1, Doc. No. 562 (sealed).) Conyers pleaded guilty to all counts. (Id.) Conyers' Plea Agreement recited a factual basis for his guilty plea; stated that there was no disagreement as to the statutory maximum penalties; acknowledged that the Court would take into consideration Conyers' advisory Sentencing Guidelines range and other sentencing factors; stipulated that either party was free to object to the Sentencing Guidelines calculations in the presentence report, except that Conyers acknowledged his prior criminal history qualified him as a career offender; set forth terms of potential cooperation; and, pursuant to Rule 11(c)(1)(C), specified that if the Government filed a U.S.S.G. § 5K1.1 motion based upon substantial assistance, Conyers' total sentence would be within a range of 180-300 months imprisonment followed by 5 years of supervised release. (Id.)

The Plea Agreement also contained a lengthy waiver of appellate and post-conviction rights that provided, among other things, that if the sentence fell within the agreed range of 180-300 months imprisonment, Conyers "knowingly waive[d]" the right to (1) appeal issues "bearing on the determination of whether he is guilty of the crimes to which he is agreeing to plead guilty; and (2) the right to bring a challenge "in any collateral attack, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241, and/or 18 U.S.C. § 3582(c)" (Id. at 31.) The Plea Agreement provides exceptions to this waiver only for claims of involuntariness, prosecutorial misconduct, ineffective assistance of counsel, or a sentence in excess of 300 months imprisonment. (Id.)

Conyers certified that he had read the Plea Agreement, carefully reviewed every part of it with his attorney, understood it, and voluntarily agreed to it. (Id. at 32.) Senior District Judge John T. Nixon imposed a sentence 60 months of imprisonment as to Counts 1 and 2, 216 months of

imprisonment as to Count 11, and 120 months of imprisonment as to Counts 15 and 16, to all run concurrently, and 60 months of imprisonment as to Count 12, to run consecutively to all other counts, for a total of 276 months of imprisonment. (Case No. 3:09-cr-00240-1, Doc. No. 1508.) Conyers then appealed the judgment of conviction and sentence, claiming that the factual basis of the plea was insufficient and the appeal waiver was unknowing and involuntary. United States v. Christopher Conyers, 603 F. App'x 462, 463-64 (6th Cir. 2015). The Court of Appeals rejected Conyers' arguments and found the factual basis sufficient. Id. at 464-466. After doing so, the court concluded that "the plea agreement and its appeal waiver were knowing and voluntary" and must be enforced, and the court dismissed Conyers' appeal. Id. at 466. Conyers filed a petition for *certiorari* to the United States Supreme Court; it was denied. Conyers v. United States, 135 S. Ct. 2064 (2015).

Conyers filed a *pro se* § 2255 Motion on May 2, 2016. (Doc. No. 1.) Judge Nixon ordered the appointment of counsel and the filing of the Superseding § 2255 Motion. (Doc. No. 24.) This matter was subsequently transferred to the docket of the undersigned.

II.  Analysis

  A.  Claims Based on *Johnson v. United States*

Conyers' § 2255 Motion first asserts that he is entitled to relief because, in the wake of Johnson v. United States, 135 S. Ct. 2551 (2015), and its progeny, (1) his career offender status increased his sentence due to underlying offenses that can no longer be considered "crimes of violence," and (2) his § 924(c) offense – which mandatorily increased his sentence by five years – was premised on a crime that can no longer be considered a "crime of violence." However, this aspect of Conyers' § 2255 Motion is precluded by his Plea Agreement.

It is well-settled that a knowing and voluntary waiver of a collateral attack is enforceable. Watson v. United States, 165 F.3d 486, 489 (6th Cir. 1999). Furthermore, the Court of Appeals for the Sixth Circuit has consistently held that plea agreement waivers of § 2255 rights are enforceable. Davila v. United States, 258 F.3d 448, 450 (6th Cir. 2001); Cox v. United States, 695 F. App'x 851, 853 (6th Cir. 2017). The Court of Appeals recently reiterated "that a Johnson-based collateral attack on an illegal sentence does not undermine the knowing and voluntary waiver of 'any right, even a constitutional right, by means of a plea agreement.'" Slusser v. United States, --- F.3d ---, No. 17-5070, 2018 WL 3359112, at *2 (6th Cir. July 10, 2018) (quoting Cox, 695 F. App'x at 853); see United States v. Morrison, 852 F.3d 488, 490-91 (6th Cir. 2017) ("[A]fter the Supreme Court voided for vagueness the 'residual clause' in the ACCA's definition of 'violent felony,' courts routinely enforced the appeal waivers of prisoners who stood to benefit." (internal citation omitted)); Cox, 695 F. App'x at 853 (enforcing waiver even though "Cox may not have known at the time of his plea that the Supreme Court would change the law in the way it did in Johnson"); In re Garner, 664 F. App'x 441, 443-44 (6th Cir. 2016) (denying petitioner authorization to file a successive § 2255 petition raising a Johnson-based challenge to the analogous provision in the U.S.S.G. because petitioner had waived his right to pursue such a § 2255 claim in his plea agreement). As the court explained, "[a] voluntary plea agreement 'allocates risk,' and '[t]he possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.'" Slusser, 2018 WL 3359112, at *2 (quoting Morrison, 852 F.3d at 490). "By waiving the right to appeal, a defendant assumes the risk that a shift in the legal landscape may engender buyer's remorse." Morrison, 852 F.3d at 490 (citing Bradley, 400 F.3d at 464). "The subsequent developments in this area of the law 'do[ ] not suddenly make [his] plea

involuntary or unknowing or otherwise undo its binding nature.'" Slusser, 2018 WL 3359112, at *2 (quoting Bradley, 400 F.3d at 463).

The Court of Appeals has held that Conyers' Plea Agreement, including the waiver provision, was knowing and voluntary. Conyers, 603 F. App'x at 466. Although Conyers may not have known of the future Johnson jurisprudence at the time of his plea, he knew that § 2255 afforded him an avenue to subsequently challenge his sentence as unlawful and he knowingly chose to waive his right to seek § 2255 relief except on other limited bases. The Court, therefore, will enforce Conyers' waiver and not reach the merits of Conyers' Johnson arguments.

B. Claim Based on *Rosemund v. United States*

Conyers next seeks to utilize the Supreme Court's decision in Rosemund v. United States, 134 S. Ct. 1240, 1249-50 (2014), to invalidate his guilty plea. In Rosemund, the court held that a person "has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." Id. at 1249. Conyers essentially contends that his plea as to the § 924(c) charge lacks a sufficient factual basis – i.e., Conyers "cannot be found guilty" because there was insufficient evidence that Conyers had foreknowledge that one of his confederates would be possessing a gun in furtherance of Hobbs Act robbery.

A petitioner may make an actual innocence claim in a habeas corpus motion. Wooten v. Cauley, 677 F.3d 303, 307–08 (6th Cir. 2012). Petitioners in such a circumstance must show "(1) the existence of a new interpretation of statutory law, (2) which was issued after the petitioner had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) is retroactive, and (4) applies to the merits of the petition to make it more likely than not that no reasonable juror would have convicted him." Id. at 307–08. However, Conyers' Rosemund argument fails for two reasons. First, "the Supreme Court did not hold Rosemund to be

5

retroactively applicable to cases on collateral review." Evans v. United States, No. 14-2170, 2015 WL 5838647, at *3 (W.D. Tenn. Oct. 7, 2015); accord Steiner v. United States, Civil Action No. 2:14cv1256-WKW, 2017 WL 9472744, at *2 (M.D. Ala. Apr. 13, 2017) ("The Supreme Court has not made its decision in Rosemond retroactively applicable to cases on collateral review."); Cooper v. Brien, Civil Action No. 5:14CV112 (STAMP), 2015 WL 6085717, at *3–4 (N.D. W. Va. Oct. 16, 2015) (holding that Rosemond is not retroactively applicable and listing cases where Rosemond was not retroactively applied); Woods v. Wilson, Civil No. 15-623 ADM/HB, 2015 WL 2454066, *5 (D. Minn. May 22, 2015) (concluding that "the holding in Rosemond does not represent a new rule of law"); Nix v. United States, Civil No. 1:15CV79-LG, 2015 WL 2137296, *2-3 (S.D. Miss. May 7, 2015) (concluding that Rosemond is not retroactively applicable to cases on collateral review); Aquil v. Butler, Civil Action No. 6:14-230-DCR, 2015 WL 1914404, *4 (E.D. Ky. Apr. 27, 2015) (concluding that a § 2241 petition could not proceed under the savings clause based on Rosemond because "Rosemond does not apply retroactively to cases on collateral review").

Second, in Conyers' criminal appeal, which occurred after Rosemund, the Sixth Circuit expressly found that the Plea Agreement contained "sufficient circumstantial evidence" to comprise the factual basis of the § 924(c) charge. Conyers, 603 F. App'x at 466. After analyzing the evidence, the court concluded that "since Conyers knew Lil Ced would be armed with a gun, he could reasonably foresee that the robbers would be too." (Id. (citing United States v. Wade, 318 F.3d 698, 702 (6th Cir. 2003)).

Because Rosemund is not retroactive on collateral review and there was a sufficient factual basis for Conyers' § 924(c) charge, this claim fails.

C. Ineffective Assistance of Counsel Claims

Third, Conyers' § 2255 Motion raises several claims of ineffective assistance of counsel.

1. <u>Legal Standards</u>

In order to prevail on an ineffective assistance of counsel claim, the burden is on Conyers to show: (1) trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases; and (2) actual prejudice resulted from the deficient performance.[2] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Cullen v. Pinholster</u>, 563 U.S. 170, 189 (2011); <u>Campbell v. United States</u>, 364 F.3d 727, 730 (6th Cir. 2004). "'Surmounting <u>Strickland's</u> high bar is never an easy task'" because "[e]ven under *de novo* review, the standard for judging counsel's representation is a most deferential one[.]" <u>Harrington v. Richter</u>, 562 U.S. 86, 105 (2011) (quoting <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010)).

To establish an ineffectiveness of counsel claim, a defendant must first show that counsel's performance was deficient: "[a]n attorney's performance is deficient if it is objectively unreasonable under prevailing professional norms." <u>Hodges v. Colson</u>, 727 F.3d 517, 534 (6th Cir. 2013). In this regard, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689. In fact, "[t]he <u>Strickland</u> Court held that petitioner must show 'that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" <u>Sylvester v. United States</u>, 868 F.3d 503, 510 (6th Cir. 2017) (quoting <u>Strickland</u>, 466 U.S. at 687).

---

[2] When deciding ineffective-assistance claims, courts need not address both components of the inquiry "if the defendant makes an insufficient showing on one." <u>Strickland</u>, 466 U.S. 697.

7

In assessing prejudice, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See Wong v. Belmontes, 558 U.S. 15, 27 (2009) (per curiam). In order to establish prejudice, the petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Lafler v. Cooper, 566 U.S. 156, 163 (2012) (quoting Strickland, 466 U.S. at 694). "In making this showing, '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" Sylvester, 868 F.3d at 510 (quoting Strickland, 466 U.S. at 693). Rather, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

Notably, "criminal justice today is for the most part a system of pleas, not a system of trials." Lafler, 566 U.S. at 170. It is important, therefore, that the Sixth Amendment right to counsel extends to the plea-bargaining process of criminal proceedings, Lafler, 566 U.S. at 162 (2012), and Missouri v. Frye, 566 U.S. 134, 144 (2012), and criminal defendants are "entitled to the effective assistance of competent counsel during plea negotiations," Lafler, 566 U.S. at 162. How to define the duty and responsibilities of defense counsel in the plea bargain process lends itself to being "a difficult question." Frye, 566 U.S. at 144. That is why the Supreme Court has explained that:

> [S]trict adherence to the Strickland standard [is] all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude Strickland requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with

> the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. . . .
>
> Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the . . . teachings of Strickland. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude Strickland . . . could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.
>
> In the case of an early plea, neither the prosecution nor the defense may know with much certainty what course the case may take. It follows that each side, of necessity, risks consequences that may arise from contingencies or circumstances yet unperceived. The absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered.

Premo v. Moore, 562 U.S. 115, 125 (2011).

Accordingly, claims of ineffective assistance of counsel in the plea bargain context are also governed by the two-part test set forth in Strickland. Frye, 566 U.S. at 140 (citing Hill v. Lockhart, 474 U.S. 52, 57 (1985)). The performance prong requires a defendant to show that counsel's representation regarding a plea fell below an objective standard of reasonableness. Lafler, 566 U.S. at 163; Thompson v. United States, 728 F. App'x 527, 531 (6th Cir. 2018). At the plea stage, counsel satisfies Strickland's objective standard of reasonableness when he "review[s] the charges with [his client] by explaining the elements necessary for the government to secure a conviction, discuss[es] the evidence as it bears on those elements, and explain[s] the sentencing exposure [his client] will face as a consequence of exercising each of the options available." Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003). To establish prejudice "[i]n the context of pleas[,] a

9

defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163; see also Hill, 474 U.S. at 59 ("The . . . 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process");[3] Thompson, 728 F. App'x at 531 (same). "In other words, once a defendant demonstrates that counsel's performance was deficient, [h]e must "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" West v. Berghuis, 716 F. App'x 493, 496 (6th Cir. 2017) (quoting Hill, 474 U.S. at 59).

        2.        Evidentiary Hearing and Claims

The decision on whether to hold an evidentiary hearing on a § 2255 petition is a matter of discretion. Huff v. United States, 734 F.3d 600, 607 (6th Cir. 2013). Recently, the United States Court of Appeals for the Sixth Circuit has summarized the guidepost used for exercising that discretion:

> An evidentiary hearing "is required unless the record conclusively shows that the petitioner is entitled to no relief." Campbell v. United States, 686 F.3d 353, 357 (6th Cir. 2012) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999)); see also 28 U.S.C. § 2255(b). The burden "for establishing an entitlement to an evidentiary hearing is relatively light," and "[w]here there is a factual dispute, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999). A petitioner's "mere assertion of his innocence," without more, does not entitle him to an evidentiary hearing. Valentine v. United States, 488 F.3d 325, 334 (6th Cir. 2007); see also Turner, 183 F.3d at 477. But when presented with factual allegations, "a district court may only forego a hearing where 'the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently

---

[3] In Hill, when evaluating the petitioner's claim that ineffective assistance led to the improvident acceptance of a guilty plea, the Supreme Court required the petitioner to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

> incredible, or conclusions rather than statements of fact.' "
> MacLloyd v. United States, 684 F. App'x. 555, 559 (6th Cir. 2017)
> (internal quotation marks omitted) (quoting Arredondo, 178 F.3d at
> 782). "[W]hen a defendant presents an affidavit containing a factual
> narrative of the events that is neither contradicted by the record nor
> inherently incredible and the government offers nothing more than
> contrary representations to contradict it, the defendant is entitled to
> an evidentiary hearing." Huff, 734 F.3d at 607 (citation and internal
> quotation marks omitted).

Martin v. United States, 889 F.3d 827, 832 (6th Cir. 2018).

### a. Evidence of Foreknowledge

Conyers alleges that his counsel failed to advise him that the Government's evidence of his foreknowledge was weak and thus "may not have been sufficient to establish that he aided and abetted either the attempted prison escape or the use of a firearm in furtherance of a Hobbs Act robbery" under Rosemund. This claim does not require a hearing. Rosemund was decided *three years after* the Plea Agreement was struck. As a result, Conyers' counsel cannot be deemed ineffective for failing to anticipate that decision and provide advice to Conyers based on that future refinement of the law.[4] See Thompson v. Warden, Belmont Corr. Inst., 598 F.3d 281, 288 (6th Cir. 2010) ("In sum, . . . counsel is not ineffective for failing to predict the development of the law."); United States v. Burgess, 142 F. App'x 232, 240 (6th Cir. 2005) (holding trial counsel could not be deemed ineffective for failing to anticipate the decision in a Supreme Court case filed one month after defendant's sentencing); Lott v. Coyle, 261 F.3d 594, 609 (6th Cir. 2001) (holding that a petitioner's counsel was not ineffective for failing to make a particular argument because "we

---

[4] There might be a circumstance where "counsel's failure to raise an issue whose resolution is *clearly foreshadowed by existing decisions* might constitute ineffective assistance of counsel." Lucas v. O'Dea, 179 F.3d 412, 420 (6th Cir. 1999) (emphasis added). But that was not the case with Rosemund, which was a resolution of a circuit split.

11

cannot conclude that [ ] counsel should have reasonably anticipated" the change in the law, even though there were conflicting opinions on the issue).

Beyond this, as to aiding and abetting Hobbs Act robbery, it is true that prior to Rosemund the involvement of a gun had to at least have been reasonably foreseeable. See, e.g., United States v. Wade, 318 F.3d 698, 701-02 (6th Cir. 2003). However, in Conyers' criminal appeal, the Sixth Circuit expressly found that the Plea Agreement contained "sufficient circumstantial evidence" to comprise the factual basis, *including* the foreknowledge aspect of aiding and abetting Hobbs Act robbery. Conyers, 603 F. App'x at 466. It was not professionally unreasonable for Conyers' counsel, at the time of plea negotiations, to reach the same conclusion later made by that court and to so advise Conyers. Stated differently, counsel was not incompetent for failing to advise Conyers as to the weakness of evidence that counsel could legitimately view as sufficient to make the charge.

As to the aiding and abetting escape charge, Conyers' counsel testified that he *did* in fact advised Conyers that: "you and I both believe you are not guilty of the escape charges, in fact, that they are BS. . . ." (Case No. 3:09-cr-00240-1, Doc. No. 1075 at 33.) Conyers' counsel also attempted to get the prosecutor to place "willful blindness language" into the plea agreement "as opposed to he had knowledge it was – it was about an escape." (Id.) It appears that counsel well understood the problems related to the escape charges that Conyers' resisted, but simply did not have the leverage to convince the Government to drop those charges from the Plea Agreement. This is not incompetence.

    b.  Elements of Count 11

Conyers alleges that his counsel failed to advise him that the Sixth Superseding Indictment "was defective for not listing every element of each of the charged counts."[5] Conyers' specifically refers to Count 11, which charged Conyers with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951. (Doc. No. 38 at 11.) He argues that the Government was required to allege an overt act under United States v. Benton, 852 F.2d 1456, 1465 (6th Cir. 1988), but did not. This claim does not require a hearing because it fails as a matter of law.

In United States v. Rogers, 118 F.3d 466, 474 n.8 (6th Cir. 1997), the Sixth Circuit explained that, while one panel of the court had suggested that proof of an overt act is required, see Benton, 852 F.2d at 1465 (in the context of a discussion of a Hobbs Act conspiracy double jeopardy claim), another panel of the court had held to the contrary, see United States v. Shelton, 573 F.2d 917, 919 (6th Cir. 1978) (in the context of discussing whether proof of actual extortion was required for Hobbs Act conspiracy). The Rogers panel described the issue as "unresolved" in this Circuit. Rogers, 118 F.3d at 474 n.8.

Since that time, the clear weight of authority, while admittedly not unanimous, dictates that an overt act is *not* a required element of a Hobbs Act conspiracy. The general conspiracy statute, 18 U.S.C. § 371, does contain an overt act requirement – i.e., that "one or more of such persons do any act to effect the object of the conspiracy." In United States v. Shabani, 513 U.S. 10, 14-15 (1994), in the context of an examination of 21 U.S.C. § 846, the United States Supreme Court held that Congressional silence regarding an overt act requirement in a conspiracy statute more specific than the general conspiracy statute means that Congress dispensed with such a requirement. See also U.S. v. Warshak, No. 1:06-CR-00111, 2008 WL 483339, at *1 (S.D. Ohio. Feb. 19, 2008)

---

[5] The § 2225 Motion actually references the Fifth Superseding Indictment. (Doc. No. 24 at 16.) However, Conyers' reply brief clarifies that he is referring to the Sixth Superseding Indictment to which he pleaded guilty. (Doc. No. 38 at 11.)

("The Court is convinced that where the text of a statute makes no requirement of the element of an overt act to establish an offense, the government need not prove an overt act for conviction."). The Hobbs Act makes it a crime only to conspire to "obstruct[ ], delay[ ] or affect[ ] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). Unlike the general conspiracy statute, § 1951 on its face does not require either allegation or proof of overt acts; the agreement joined is the entire offense. At least five Courts of Appeal have explicitly refused to find an overt-act requirement in the language of the Hobbs Act. See United States v. Ocasio, 750 F.3d 399, 409 n.12 (4th Cir. 2014); United States v. Salahuddin, 765 F.3d 329, 339 (3d Cir. 2013); United States v. Monserrate-Valentin, 729 F.3d 31, 62 (1st Cir. 2013); United States v. Pistone, 177 F.3d 957, 959-60 (11th Cir. 1999); United States v. Clemente, 22 F.3d 477, 480 (2d Cir. 1994); see also, e.g., United States v. Henley, Criminal Case No. 1:16-CR-00151-LMM-JFK, 2017 WL 2952821, at *16 (N.D. Ga. May 19, 2017) (same); United States v. Castrillo, No. Cr. 15-0205 JH, 2016 WL 10267677, at *9 (D.N.M. May 2, 2016) (same).[6] The reasoning of these courts is persuasive. It was not necessary for the Government to set forth specific overt acts in Count 11 of the Sixth Superseding Indictment. Accordingly, Conyers' counsel did not provide ineffective assistance by failing to bring Count 11 to his attention.

### c. Understanding of Plea Agreement

Next, Conyers alleges that his counsel failed to ensure his understanding of the Rule 11(c)(1)(C) Plea Agreement and, specifically, that "by its terms, he could receive no less than a sentence of 180 months imprisonment, even if the Government filed a § 5K1.1 motion." It is true that "an attorney's failure to properly inform his client about his sentencing exposure may

---

[6] But see United States v. Stephens, 964 F.2d 424, 427 (5th Cir. 1992) (holding that an overt act is required).

constitute ineffective assistance." Munson v. Rock, 507 F. App'x 53, 56 (2d Cir. 2013) (collecting cases); see also Wooten v. Raney, 112 F. App'x 492, 496 (6th Cir. 2004) (noting that "in some cases the failure to inform a defendant correctly of his sentencing exposure at trial may constitute ineffective assistance of counsel"); Moss v. United States, 323 F.3d 445, 474 (6th Cir. 2003) (stating that " a failure to provide professional guidance to a defendant regarding his sentence exposure prior to a plea may constitute deficient assistance"). But the issue that Conyers is raising is not that his counsel failed to properly advise him as to the comparative sentence exposure between standing trial and accepting a plea offer, but that his counsel did not properly advise him that the plea offer itself provided for a 180-month minimum sentence regardless of any § 5K1.1 motion. Thus, the question is not counsel's explanation of the sentence that Conyers would have faced at trial, but of the sentence that was set forth in the Plea Agreement.

Paragraph 16 of the Plea Agreement states that "*the parties agree*," pursuant to Federal Rule of Civil Procedure 11(c)(1)(C), that "if the United States does file a [§ 5K1.1] substantial assistance motion . . . that a total sentence within a range of 180-300 months followed by a five year term of supervised release *is the appropriate disposition in this case*." (Case No. 09-cr-00240, Doc. No. 562 at ¶ 16 (emphasis added).) It further provided that the Conyers could withdraw from the Plea Agreement if the Court did not agree to grant such a departure motion and sentence him within that range. (Id.) At no point does the Plea Agreement discuss or contemplate a sentence below the agreed 180-300 month post-§ 5K1.1 range. Conyers certified that he had read the Plea Agreement and "carefully reviewed every part of it with [his] attorney." (Id. at ¶ 27.) Conyers stated that he understood the Plea Agreement and voluntarily agreed to it. (Id.) Trial counsel certified that he had reviewed "the provisions of the Sentencing Guidelines and Policy Statements . . . and fully explained . . . the provisions of those guidelines that may apply in this case." (Id. at

15

¶ 28.) Counsel further averred that he had "reviewed every part of this Plea Agreement with defendant." (Id.)

At a hearing to withdraw his Plea Agreement before Judge Nixon, Conyers claimed that he thought the 180-300 month Rule 11(c)(1)(C) Plea Agreement was just "legally how they had to write it up," but that with the § 5K1.1 motion, he could get "whatever" sentence the Court wanted to give him. (Case No. 3:09-cr-00240, Doc. No. 1061 at 18-19.) Under cross-examination, however, Conyers admitted that he had gone over the Plea Agreement "line for line" and "testified under oath that [he] had gone over it line for line." (Id. at 64-65.) When asked by the Government if he understood that "if the Government filed the motion for you because you continued to cooperate, *the final sentencing range, that the judge would pick somewhere in there, is 15 to 25 years*. Correct?" (Id. at 108-09 (emphasis added).) He replied: "Yes, sir."

Trial counsel testified that this was his understanding as well: the Guidelines range if convicted at trial was "likely to be 360 to life," if Conyers got the three-level reduction for acceptance of responsibility it would come down to "262 to whatever it was," and, as a result of the negotiated plea, if Conyers cooperated and obtained the § 5K1.1 motion, "the Court would be bound, if it accepted the agreement, to a sentence somewhere *between 15 to 25* [years],[7] rather than whatever other sentence might have been imposed." (Case No. 3:09-cr-00240, Doc. No. 1075 at 66-67 (emphasis added).) Counsel testified that he discussed what the Plea Agreement meant with Conyers, knew he was "reasonably intelligent," and believed at the time that he understood the Plea Agreement. (Id. at 67.)

In short, the record indicates that counsel (a) understood the Plea Agreement, (b) discussed it with Conyers, and (c) Conyers understood that he could receive a sentence of no less than 180

---

[7] 15 to 25 years is the equivalent of 180 to 300 months.

months' imprisonment. There is no evidence to suggest that counsel's performance was deficient in this regard. Moreover, there is no evidence that Conyers was prejudiced by any possible misunderstanding. To demonstrate prejudice, Conyers must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. However, Conyers has not argued that he would have preferred trial to the 180-300 month Rule 11(c)(1)(C) Plea Agreement. Indeed, Conyers acknowledged that at trial his Guidelines range would have been 360 months and above. Conyers simply wants, in retrospect, for the Plea Agreement to have allowed for a lower sentence. That was not contemplated, and there is no prejudice.

### d. Advice as to Availability of Plea

Finally, Conyers alleges that his counsel wrongly advised him that he could not plead guilty to some counts of the Sixth Superseding Indictment and not guilty to other counts. Conyers is not entitled to a hearing on this claim. This issue also arose at Judge Nixon's hearing on Conyers' motion to withdraw his plea. As here, Conyers represented to the Court that his trial counsel had told him that "legally, he . . . couldn't do it" and that "if [he] went to trial, [he] had to take everything to trial." (Case No. 3:09-cr-00240, Doc. No. 1061 at 154.) Trial counsel, on the other hand, testified that he and Conyers "discussed the possibility of various types of pleas," including, specifically, whether it would do Conyers any good to plead guilty to certain charges but take others to trial. (Case No. 3:09-cr-00240, Doc. No. 1075 at 22.) Counsel's recollection differed "strongly" from that of Conyers. In the words of counsel: "It could be done. We discussed that." (Id. at 23.) In his decision denying Conyers' motion to withdraw plea, Judge Nixon considered the facts of record and implicitly made a credibility determination in favor of counsel by crediting his testimony and rejecting Conyers' argument. (Case No. 3:09-cr-00240, Doc. No. 1213 at 16-17.)

17

Counsel (who had served as an Assistant United States Attorney for over 20 years before joining the C.J.A. Panel) had a legal understanding that comported with the text of the Plea Agreement itself, which reminded Conyers that the jury "must consider each count of the indictment against defendant separately." (Case No. 3:09-cr-00240, Doc. No. 562 at ¶ 6(b).) As discussed above, Conyers certified that he had read all of the Plea Agreement, discussed it with his counsel, and understood it. Conyers' criminal case was not particularly unique in that it involved some claims for which he basically acknowledged guilt and others that he resisted. (See generally Case No. 3:09-cr-00240, Doc. Nos. 1061, 1075.) In the end, he opted to plead guilty to all charges in return for a Rule 11(c)(1)(C) plea and a § 5K1.1 motion. This claim of deficient performance is contradicted by the record.

      e. <u>Summary</u>

For the reasons above, the record establishes that, at the plea stage, trial counsel satisfied <u>Strickland's</u> objective standard of reasonableness by reviewing the charges with Conyers at length, including discussing the elements, discussing the evidence as it bears on those elements, and explaining the exposure Conyers would face as a consequence of exercising each of the options available. <u>Smith</u>, 348 F.3d at 553. There is no question that Conyers was between a rock and a hard place in this case, but there is no credible evidence his desire to negate his guilty plea is anything more than "buyer's remorse" as opposed to deficient lawyering. Furthermore, Conyers has offered little to support the conclusory assertion that he would not have pleaded guilty absent the prejudice he asserts.

  D. <u>Knowing and Voluntary Plea</u>

Conyers also argues that his guilty plea was not knowing and voluntary. This claim is without merit for two reasons. First, the Court of Appeals has already held that, because there was

no problem with the factual underpinnings of Conyers' guilty plea, the Plea Agreement *was* knowing and voluntary. Conyers, 603 F. App'x at 466. Second, "[i]t follows from [the] conclusion that trial counsel was not ineffective that Conyers' plea was knowing and voluntary." West, 716 F. App'x at 498. "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" of effective representation. Hill, 474 U.S. at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258, 267 (1973)). Because Conyers has failed to demonstrate that counsel was ineffective, his claim that his plea was involuntary also fails. The record, moreover, shows that Judge Nixon satisfactorily inquired into the basis of the plea as required by Rule 11. (Case No. 3:09-cr-00240, Doc. No. 1213.)

E. Certificate of Appealability

The Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Cases in the United States District Courts. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). Conyers has not satisfied this standard and thus a certificate of appealability will be denied.

III. Conclusion

For the reasons discussed above, Petitioner's Superseding § 2255 motion (Doc. No. 24) will be **DISMISSED WITH PREJUDICE**. Petitioner having failed to make a substantial showing

of the denial of a constitutional right, a certificate of appealability will be **DENIED**. 28 U.S.C. § 2253(c).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE